SALEM ELECTRIC CO. v. THOMSON–HOUSTON ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit. April 30, 1906.)

No. 60.

PATENTS—INVENTION—SYSTEM OF ELECTRICAL DISTRIBUTION.

The Thomson & Rice patent, No. 413,293, for a system of electrical distribution especially adapted to lighting purposes, and having for its objects to run lamps or other translating devices in series and in multiple on one and the same system, and from one and the same source of supply, embodies a combination or aggregation of elements, all of which were old, and each of˙which performs only its old function, and in view of the prior art, and especially of the Edison municipal system, is void for lack of patentable invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 27–29.]

Appeal from Circuit Court of the United States for the District of New Jersey.

For opinion below, see 140 Fed. 445.

Joseph˙ C. Fraley, for appellant.

Richard N. Dyer, for appellee.˙

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This case is before us upon an appeal by the Salem Electric Company [the defendant below] from a decree against that company in a suit in equity brought on January 9, 1903, by the Thomson-Houston Electric Company [here the appellee] for˙ infringement of letters ˙patent No. 413,293, granted on October 22,

1889, to Elihu Thomson and Edwin Wilbur Rice, Jr., for an improvement in "systems of electrical distribution." The specification states that the invention "relates to systems of electric distribution generally, but is primarily designed for use in those systems employing alternating currents." The object of the invention, as stated in the specification, "is to run electric lamps—such, for instance, as incandescent lamps or other translating devices—in a series circuit on the same system with other translating devices run in multiple;" and a further stated object "is to run series incandescent or arc lamps from the same source of supply as incandescent lamps run in multiple." After thus stating the objects of the invention, the specification proceeds as follows:

"To these ends our invention consists in a system of electric distribution comprising constant potential mains, translating devices of any desired character in multiple between said mains, a circuit connected across said mains and containing translating devices in series, and a current-regulator in said series circuit. Our invention consists, further in a system of distribution comprising a series incandescent-lamp circuit placed between said mains of constant potential, means for keeping the current of said series circuit constant on the extinguishment of series lamps, transformers or compensators, as will be hereinafter described, connected in multiple across the mains, and translating devices supplied in multiple from said transformers or compensators. Our invention consists further, in the novel system of distribution hereinafter described, and comprising alternating-current mains of constant potential, a circuit containing translating devices in series between said mains, means for keeping the current of said circuit constant, transformers connected in multiple from said mains, and incandescent lamps or other translating devices supplied in multiple from said transformers. Our invention consists, further, in certain novel combinations or systems of apparatus more specifically indicated in the claims."

The claims alleged to be infringed are the following:

"(1) A system of electric distribution comprising constant-potential mains having translating devices of any desired character in multiple between them, a series circuit of distribution connected across said mains and containing translating devices in series, and a current regulator in said series circuit."

"(3) The herein-described system of electric distribution, comprising alternating-current mains of constant potential, a series circuit containing translating devices—such as series lamps—means for keeping the current of said circuit constant, transformers, or converters connected in multiple between said mains, and incandescent lamps or other translating devices supplied in multiple from said transformers.

"(4) In an alternating-current system of electric lighting, constant-potential mains having transformers or compensating coils connected in multiple between them, incandescent lamps supplied in multiple from subcircuits connected to said transformers, a series circuit connected between said mains and containing incandescent series lamps, and a current-regulating device included in said series lamp circuit."

"(6) In an alternating-current system of distribution, alternating-current mains of constant potential, translating devices of any desired character supplied in multiple between said mains, a series circuit of distribution containing translating devices in series, a variable reactive coil in the series circuit, and devices responsive to the variations in the current on said circuit for adjusting the reaction of said coil."

The principal defenses to this suit are first, the lack of patentable subject-matter, in that the described system is a mere aggregation of old elements which have no inter-dependence or combined mode of operation; and second, the lack of patentable novelty. In view, then,

of the character of the litigation, we deem it best to quote the main part of the specification, rather than to give an analysis of it or state the substance. After referring to the patent drawings, the specification proceeds thus:

· "A indicates any source of electric currents adapted to supply to mains. a, b. electric energy of constant potential. In the present instance we have indicated an alternating-current dynamo. The field of such dynamo may obviously be supplied from the armature of the machine itself, or may be separately excited, as indicated, by a dynamo, E, charging the field-magnet of the machine which supplies current to the mains, a, b. Between the mains, a b, are connected at , C, C¹, C², in multiple, translating devices of any desired character.

"In Fig. 1 we have shown translating devices consisting of electric converters adapted to translate the high potential energy on mains, a, b. into energy of lower potential, but greater quantity on the local circuits adapted to supply translating devices, M, connected in multiple to distributing-wires leading from the secondaries of the converters. The translating devices, M, may be incandescent lamps, as indicated, or of any other. desired character. In a circuit, c, d, supplied also from the mains, a, b, are indicated a number of translating devices. L, L, placed in series with one another, so as to produce what is known in the art as a 'series circuit.' The translating devices L, may be what is known as 'series incandescent lamps,' or other forms of lamps or translating devices adapted to run in series with one another between the mains, a, b. The devices, L, are supposed to be provided with some appliance by means of which, in case of extinguishment of the lamp or interruption of the circuit through the same, a shunt or substitute path. as indicated at F, will be provided for the current flowing on the series circuit. Devices of this character for application to what are known as 'series incandescent lamps, and adapted to automatically furnish a path for the current in case of rupture of the carbon incandescent element. are now well known in the art. The translating devices, L, may obviously have the usual auxiliaries known in the art whereby they may be designedly thrown out of operation.

"In the series circuit, c, d, Fig. 1, we have shown a current-indicator, D, adapted to indicate the amount of current flowing at any time through the circuit, c, d, from one main, a, to the other. b. In the circuit, c, d, we interpose a regulator of the current flowing, which regulator may be of any desired character. In the case of constant currents, it may be a plain electric resistance without substantial self-induction, while in the case of alternating currents we may employ an artificial resistance to the flow, consisting of a coil having large self-induction and variable by the use of a switch that shall vary the number of coils in circuit, or adapted by any other regulating means known in the art to oppose the flow of the alternating currents in amount depending upon the resistance in the circuit. In the present case we have shown a current-regulator consisting of a reactive coil, R, wound in sections and variable by the action of a switch, S, which throws the sections of coil into and out of the circuit, c. d. Should a lamp, L, be extinguished from any cause, the current flowing through the series circuit, c, d, inasmuch as it is derived from a source of constant potential, would obviously be increased and the remaining lamps be given an abnormal incandescence. The indicator, D, will show this increased flow, and the current-regulator, R, may be manipulated to bring the current back to its normal amount. It will of course be understood that the translating devices, L, consisting of the incandescent lamps, are distributed through a territory more or less remote from the source of supply, A, and that the mains, a, b, likewise lead out from the station where the dynamo, A, is located to any desired distance. By our system it is obvious that series incandescent lamps may be run in any desired locations from the same system which is employed to supply other translating devices in multiple from constant-potential mains, such other translating devices being distributed, as desired, over the territory to be covered from a source of supply, A. We do not limit ourselves to the use of the particular translating devices, C, C¹, C², since it is obvious that other translating devices might be supplied in multiple be-

tween the mains, *a, b.* When incandescent lamps of ordinary capacity are to be supplied from the same source, A, as the lamps, L, L, we place them in multiple as indicated at M, between circuits or wires connected to the transformer indicated. In place of transformers supplying the incandescent lamps in multiple, as indicated in Fig. 1, we may use a compensating reactive coil, described in the patent to Elihu Thomson, No. 360,125, and connect to such coil a series of local supply-circuits, as indicated in Fig. 5, each of said circuits serving to supply incandescent lamps in multiple. It is obvious that in place of the lamps, M, other translating devices of the same capacity might be substituted in multiple.

"While the current-regulator is shown as operated by hand in Fig. 1, it is obvious that it might be operated automatically, as indicated in Fig. 2, by means of an electro-magnet, M, placed in the circuit, *c, d,* and having its core, armature, or equivalent portion connected to the switch, S, or other device operating on the current-regulator. The usual retracting device, W, would be obviously applied to the switch, S. In this case an increase of current flowing through the mains, *c, d,* would cause the magnet, M, to draw down to its armature or core, and thus operate the switch, S, in a manner to vary the reaction or resistance in the circuit to a predetermined amount, thus restoring the current to normal.

"In Figs. 1 and 2 the arrangement of the arm, S, and contact-pieces is such that in passing from one contact to another the circuit, *c, d,* is ruptured. To avoid this we propose to use a double arm, parts of which are insulated from one another, and are connected with an auxiliary reactive coil, V, as indicated in Fig. 3. This device forms the subject of a patent to E. W. Rice, Jr., No. 381,420, and need not therefore be herein more particularly described.

"In Fig. 4 the artificial resistance or current-regulator is composed of a number of incandescent lamps, E, disposed in such manner that one or more of them may be inserted into the circuit, *c, d,* according as the lamps, L, on the circuit are extinguished. The insertion of lamps, R, obviously will operate to keep the current in the circuit constant. The operation may be performed by hand or automatically by such a device as indicated in Fig. 2."

It is apparent upon the face of this specification that it deals wholly with principles and methods of electric distribution previously well understood and practiced. This is conclusively shown also by the other proofs. The specification of this patent disclosed no new principle nor any new mode of operation in the transmission or distribution of electricity. From first to last the specification is based upon facts theretofore well known, and all of which had been utilized in the prior practice of electric lighting. In earlier systems of electric distribution, translating devices had been arranged in series as well as in multiple, and all the apparatus described or shown in this patent had been employed in those earlier systems. Moreover, all the devices and appliances mentioned in the body of the specification or in the claims of the patent, had been previously used for the same purposes in the art of electrical transmission and distribution. Undoubtedly all the elements embodied in the claims in suit, both as respects mechanism and the individual systems of distribution, were old in the art.

Under the proofs, it cannot be successfully contended that the substitution at the central station of a single dynamo in lieu of several separate dynamos to supply current to different circuits, was the invention of the grantees of the patent in suit, or was first taught by this patent. For that important improvement in the art of electric distribution, we are indebted to Edison, who had previously devised and disclosed to the public his great system of municipal lighting, of

144 F.—62

which a description was published in the Electrical World of February 12, 1887. In that published article, it was said and truly said, of Edison's system of municipal lighting: "The great flexibility of the system consists in the fact that a number of independent circuits can be run from one machine." This system Edison put into practical use in 1885 and patented it on October 20, 1885, by letters patent No. 328,574 and, (in a modified form) by letters patent No. 328,573. These patents disclosed a system in which the mains leading from the dynamo are kept at a constant potential and have a high voltage. Across these mains are connected several circuits in multiple, each of these circuits containing a number of lamps in series. In each series is an ammeter to indicate should one or more lamps fail or be turned off, and each series has also a regulator connected to a bank of reserved lamps, so arranged that one or more lamps can be switched into the circuit to regulate the current. Moreover, this regulator could be placed in the central station and there take care of the whole series. In the embodiment of his system Edison indeed employed a direct current; but this is immaterial, for obviously an alternating current could be used instead of a direct current, and the patent in suit expressly covers as well the use of a direct current as the use of an alternating current. No distinction is made between them. It is particularly to be noted that in Edison's system of municipal lighting, each one of the circuits connected to the common mains is absolutely independent of the other circuits. None of these circuits has anything whatever to do with the others nor is it affected by them. Each does its own work irrespective of the other circuits. Moreover, if a constant potential is maintained it matters not what number of circuits are connected across the mains, provided the capacity of the dynamo or mains be not exceeded. The proofs convince us, indeed we think it is obvious that the electrical behavior of Edison's system of municipal lighting as a whole is not affected by the nature of the individual circuits; that is, it is quite immaterial whether they are in whole or in part, series circuits or transformer circuits, or meter circuits, having no series devices.

In view of these well-understood facts, did it involve invention for these patentees simply to introduce into Edison's municipal system another circuit old in itself? These patentees cannot honestly claim to have done anything more than add an old series circuit as another member to an old multiple system of electric distribution. A diligent study of the proofs has brought us to the clear conclusion that the system of the patent in suit did not involve invention in a patentable sense, in view of the prior state of the art. Mr. Hering, an expert witness for the defendant-appellant, after discussing Edison's municipal system and other proved prior systems comprising transformers connected in multiple between constant potential mains, testified thus:

"With the knowledge existing at that time there was absolutely nothing in the nature of a problem involved in the system described in the patent in suit, that had not already been solved to those well-known systems of the prior art. The problems were to arrange transformers in multiple, which had been solved as I have shown, and to arrange a series circuit with a regulator so that it could be connected to and operated on constant potential mains in multiple with other devices, no matter what; this was solved in the Edison municipal

system. There is absolutely no new function or property of either the series circuits or the multiple arc circuits, by virtue of the presence or absence of the other. In fact, the very essence of the whole system of the patent in suit is that each circuit led off from the constant potential main must be absolutely independent of the other; hence, by definition alone, they cannot have any combined function and are a mere aggregation of several well-known devices connected to the same mains. It is like connecting a motor or an incandescent lamp, or any other well-known device, across the same constant potential mains. Each is entirely independent of the other, just as different gas jets connected to the same reservoir of gas. The problems that were involved consisted in adapting each of these devices so as to enable them to be connected to constant potential mains. This was sometimes quite difficult, and in many cases involved considerable ingenuity and invention. But after this had been done by others, it is a mere aggregation of the simplest kind to then connect the different devices in multiple to the same main. The series circuit in the patent in suit is old; its regulation to adapt it to be connected to constant potential mains is old; the multiple arrangement of transformers connected to constant potential mains, is old; all this I have shown in previous answers. There is therefore no new problem involved nor is there any new function of any of the elements, or any co-operation of the several devices in connecting two or more to the same circuit."

We have great difficulty in regarding the groupings of the patent in suit as anything else than mere aggregations of old elements in which each member of a group simply performs its old function independently of the other members. But if these groupings can be considered as constituting combinations in a patentable sense, still, for the reasons already stated, we are clearly of opinion that the exercise of the faculty of invention was not required to produce the system of the patent.

The decree of the Circuit Court is reversed, with costs, and the case will be remanded to that court with instructions to dismiss the bill of complaint, with costs.